**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------------X

CALANDRA BROWN

                                                     **Complaint**
                                                 **Jury Trial Demanded**

                              Plaintiff,

        v.

METROPOLITAN TRANSPORTATION AUTHORITY
and METRO-NORTH COMMUTER RAILROAD,

                              Defendants.

------------------------------------------------------------------------------X

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff CALANDRA BROWN (at times referred to as "BROWN" or "Ms. Brown"), by and through her undersigned counsel, Jacob Fuchsberg Law Firm, as and for her Complaint in this action against Defendant Metropolitan Transportation Authority (hereinafter "MTA") and Metro-North Commuter Railroad (hereinafter "MetroNorth"), hereby alleges as follows:

### JURISDICTION AND VENUE

1.  Plaintiff invokes this Court's jurisdiction under 28 U.S.C. §§ 1331 and 1343 on the ground that this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et* seq. and §1981. Plaintiff invokes this Court's pendant jurisdiction with respect to his claims based on the common law of New York, and New York Executive Law, Article 15.

2.  The venue of this action is properly placed in the Southern District of New York pursuant to U.S.C. § 1391 because the plaintiff's claims arise within this district.

1

3.   Plaintiff CALANDRA BROWN invokes the pendent jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367(a).

## NATURE OF THE CLAIMS

4.      This is an action for declaratory, injunctive and punitive relief, as well as monetary damages and attorney's fees, to redress Defendants' unlawful employment practices committed against Plaintiff CALANDRA BROWN, who is an African-American woman, including Defendants' discriminatory treatment against BROWN, due to her race, color and/or gender, in violation of 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the New York State Human Rights Law, New York Executive Law §§ 290 et seq. (the "NYSHRL"), and the New York City Human Rights Law, New York Administrative Code §§ 8-101 et seq. (the "NYCHRL").

## PARTIES

7.      Plaintiff CALANDRA BROWN is a resident of New York State. At all relevant times, she met the definition of an "employee" under all applicable statutes.

8.      MetroNorth is a public benefit corporation and subsidiary of MTA. MetroNorth is run and operated by MTA. It was founded in 1983 when the MTA gained control over the Conrail commuter operations in New York and Connecticut. At all relevant times, MetroNorth has maintained a principal place of business located at 347 Madison Avenue, New York, New York 10017.

9.      At all relevant times, MetroNorth and MTA has met the definition of an "employer" under all applicable statues.

## PROCEDURAL REQUIREMENTS

10.     On or about October 23, 2015, Ms. Brown filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII and Section 1981, 42 U.S.C. §§ 2000e et seq, charge number 520-2016-00284.

11.     On or about March 19, 2017, Plaintiff's counsel received a notice of BROWN's right to sue issued by the DOJ and/or EEOC in connection with her previously filed charge of discrimination. This Complaint has been filed within 90 days of receipt of the notice of BROWN's right to sue from the DOJ and/or EEOC and within three years of the events described herein.

12.     Any and all other prerequisites to the filing of this suit have been made.

## FACTUAL ALLEGATIONS

13.     From 2008 through the present, Ms. Brown was employed by MetroNorth, a wholly owned and operated division of Metropolitan Transportation Authority (MTA), as a mechanic at the Croton Harmon facility, in the county of Westchester, State of New York.

14.     After six satisfactory years of being employed as a mechanic, Ms. Brown applied for a foreman position with MetroNorth on or about February 5, 2014.

15.     Ms. Brown took the required examination to become a foreman on or about February 28, 2014 and passed such examination.

16.     Following the examination, she was contacted to submit information for a background check and for an interview on or about March 4, 2014.

17.     She attended the interview as scheduled.

18.     She was denied the promotion in or about March 31 2014.

3

19.     Following her denial, she spoke with one interviewer from Human Resources, Fred Gill, to ask for feedback on the denial.

20.     Mr. Gill informed Ms. Brown that Human Resources wanted her for the position but that she received negative reviews from her supervisors.

21.     Mr. Gill further stated that an issue about earrings kept coming up during her reviews.

22.     Ms. Brown thereafter attempted to discern which of her supervisors had reviewed her, however her then-current supervisors all informed her that they were not the ones who reviewed her for the position.

23.     It is the custom and practice of MetroNorth to have an applicant's current supervisors to review them.

24.     All other candidates for the foreman position other than Ms. Brown, had their current supervisors review their work. All other candidates for the foreman position other than Ms. Brown, were males.

25.     Ms. Brown then contacted Human Resources at MetroNorth. She submitted notes, names, and dates reflecting discriminatory and harassing behavior she was routinely subjected to at MetroNorth, demonstrated the animus behind the denial of her promotion and the negative reviews she received.

26.     The conduct she detailed, which intensified following her application for promotion to Mechanical Foreman is as follows:

- Following her application for foreman, Superintendent Harry Olette asked Ms. Brown to remove earrings she was wearing and she complied. After the interaction, Harry Olette and Toni Pudente, supervisors of Ms. Brown, asked to look into Ms. Brown's file to see if she

4

was been warned previously about wearing earrings. Harry Olette continuously approached Ms. Brown to see if she was wearing earrings.

- Ms. Brown's foreman, Bobby Albert, was instructed by Toni Pudente to monitor Ms. Brown to see if she was wearing earrings with the anticipation of finding her in violation, and writing her up for such violation. Notwithstanding this unprecedented scrutiny, no such violations were found.

- Toni Pudente approached Ms. Brown in the hallway while on break to see if she was wearing earrings. She correctly informed him that the safety rule banned earrings during work on equipment, not while on break. Toni Pudente then sought to amend the safety rule to ban earrings from the entire premises.

- Ms. Brown was informed by coworkers that her Mechanical Foreman, Paul Neglia, routinely made disparaging remarks about her to other coworkers, including but not limited to telling Sauid Hanif during assignments that it was his misfortune that Ms. Brown was his partner for the day.

- On March 5, 2014, the day after Ms. Brown's interview for the foreman position, Arenda Vasquez, one of the interviewers, wrote up Ms. Brown for not swiping in and out of her work station. Ms. Brown met with her union representative Pat Howard and Arenda Vasquez to discuss the matter. Arenda Vasquez admitted she had previously told Ms. Brown that it was permissible to swipe out of a different building than her assigned building and said she would rescind the letter. The union representative questioned why a letter would have been issued in the first place if there was an agreement about the swiping policy.

- On March 31, 2014, Ms. Brown received an e-mail notification that she did not get the position.

- Ms. Brown spoke with Human Resources representative, Fred Gill, who told her that earrings kept coming up during her review.

- On June 4, 2014, Ms. Brown spoke to a colleague Mike Smithwire about comments he made about not liking to work with Ms. Brown. Mr. Smithwire in the presence of foreman Bobby Albert denied such comments. Later, Bobby Albert pages Ms. Brown to say that he did not appreciate her words to Mr. Smithwire and to call her union representative. She called her representative who interviewed several employees and met with General Foreman Ed Kelly, Ms. Brown, and Bobby Albert. During the meeting Mr. Albert kept aggressively pointing at Ms. Brown, refused her request that he desist to the point that the union representative had to intervene. Mr. Albert then accused Ms. Brown of leaving the building without permission. Ed Kelly stated he had a call from the Superintendent of Building 6 that Ms. Brown was up there before lunch. The union representative ten asked Mr. Kelly if it was common for him to receive calls from Superintendents when other employees are at different buildings, he stated he recalled one instance about a laborer. The union representative also spoke to several other employees who stated Bobby Albert told

them thanks to Calandra Brown, they are no longer able to leave the building without permission.

27.     On or about July 23, 2014, Ms. Brown met with Robert Aguierre of Human Resources and he interviewed her about her complaint and its details as listed above.

28.     After Ms. Brown filed her complaint of discrimination, she was retaliated against by being brought up on charges of job abandonment and failing to complete work in September 2014. At a hearing, the charges were unfounded and dismissed.

29.     After the dismissal of such charges, Ms. Brown's supervisors attempted to write her up for additional baseless charges and would threaten her with additional charges but such complaints never progressed to formal charges.

30.     In October 2014, Bobby Albert, a subject of Ms. Brown's discrimination complaint to Human Resources, approached her after his interview in connection with her complaint and tried to talk to her about her allegations. She informed him that she could not talk with him about the complaint.

31.     Ms. Brown thereafter wrote a letter to Roberto Aguierre about Mr. Albert's conduct and stated she feels the harassment is worse since she filed her complaint and that her supervisors harass her without fear of reprisal.

32.     In a letter dated December 29, 2014, the Assistant Director of Diversity and Equal Employment Opportunity wrote a letter to Ms. Brown stating "our office has concluded that there was sufficient evidence to support your allegation of discrimination."

33.     The substantiated findings of discrimination were part and parcel to Ms. Brown's non-selection for the foreman position.

34.    Ms. Brown met with Robert Rodriguez and Roberto Aguierre as well as her Union Representative and the CMO, Mike Yeager, on February 2, 2015, about how to move forward after the findings described in paragraph 30 above.

35.    At the meeting, Ms. Brown was informed she had experienced systemic discrimination and would be allowed to go through the interview process again for the foreman position.

36.    Ms. Brown expressed confusion and concern at having to go through the interview process again since it had already been determined that she was previously not selected for discriminatory reasons. However, she wanted to be cooperative and therefore followed this instruction although she wrote a letter objecting to the process.

37.    Her interview panel for her re-application notably included Arenda Vasquez, a person from Ms. Brown's prior panel that did not select her. Predictably, Ms. Brown was again denied the promotion.

38.    Ms. Brown's reviewers were again not supervisors she currently worked with while the other applicants' reviewers were current supervisors who described themselves as being very familiar with the candidate's work. This lack of consistency in the review process that was applied only to Ms. Brown resulted in an unfair promotion process.

39.    In acknowledging that discrimination and harassment exists systemically at MetroNorth and is responsible for Ms. Brown's failure to be promoted for a job for which she is qualified, and then failing to rectify the results of such discrimination, MetroNorth has permitted and condoned an illegal employment practice.

40.    In May 2015, after Ms. Brown was denied the promotion again, this counsel for Ms. Brown contacted counsel for MetroNorth and e-mailed counsel a draft of the complaint to be submitted to the EEOC containing the above details.

41.     Following such notification, personnel at MetroNorth were interviewed regarding the allegations and in the course thereof, were informed of the potentially impending complaint.

42.     After such personnel were notified of Ms. Brown's complaints, the harassing behaviors Ms. Brown was subjected to escalated.

43.     On September 10, 2015, Ms. Brown was confronted by a coworker, Lourdes Casanovas, in the locker room and such coworker shoved Ms. Brown's belongings off of a bench. She gesticulated and yelled at Ms. Brown.

44.     Immediately after such incident, Ms. Brown wrote a letter to her supervisor, Jack Curtis to ask him to remind Ms. Casanovas of MetroNorth's conduct policy.

45.     On September 18, 2015, Ms. Brown was written up for two charges including job abandonment and failure to perform duties. She was issued a letter of warning by Kirk Fleming indicating that she was exhibiting confrontational and aggressive behavior and such letter would be placed in her file. The purported confrontational and aggressive behavior was said to have occurred during the interaction described in Paragraph 44.

46.     Upon information and belief, no letter of warning was sent to the subject of Ms. Brown's September 10, 2015 complaint and such person was the aggressor.

47.     These practices are in violation of Title VII of the Civil Rights Act, 42 U.S.C. 2000e-2, because the MTA and MetroNorth allowed a qualified candidate to be denied a promotion due to discrimination based on gender and race. This conduct also constitutes retaliation.

48.     The systemic discrimination that pervades MTA and MetroNorth is permitted to continue because Human Resources is unable to rectify wrongdoing.

49.     The MTA has a Chief Diversity Officer and MetroNorth has a Director of Diversity and Equal Employment Opportunity. The purpose of these positions is to prevent discriminatory practices through proper search and careful examination.

50.     However, either due to intimidation or acquiescence to the discriminatory cultures, these positions did not carry out the required functions even though they concluded that discrimination and harassment had occurred.

51.     They failed to warn and advise senior management and/or senior management failed to heed their advice and warning that by not rectifying the discrimination and harassment experienced by Ms. Brown, they were permitting such practices to continue. Thus required EEO policies for the MTA and MetroNorth were not followed.

52.     The MTA and MetroNorth have centralized personnel departments, all of which have the responsibility of administering and implementing policies and procedures to thwart gender and race biased decision-making. However, this responsibility is not methodically exercised in deference to supervisory decision makers who often hire, promote and/or fail to promote employees in managerial positions without proper posting, search, outreach or review.

53.     The described unlawful pattern and practice begins and the top, being condoned or permitted by Human Resources and thereby causing it to exist and perpetuate throughout the MTA including MetroNorth, a culture and atmosphere that condones and perpetuates sexism and racism is the workforce, underutilizes women, harasses women, and fails to provide equal employment opportunity. There is also retaliation for engaging in the protected activity of asserting one's rights or filing a complaint.

54.     This is notwithstanding the facts that MTA and MetroNorth have knowledge that its Croton Harmon branch systemically discriminates against and creates a hostile work environment for women, and specifically, women of color.

55.     Historically, in an earlier lawsuit, Class Plaintiffs established through statistical and anecdotal evidence, as well as a sociological report, to the satisfaction of the Second Circuit Court of Appeals, the existence of triable issues of fact concerning company-wide disparate patterns or practices and impact of discrimination against African-American employees at MTA and MetroNorth between 1985 and 1996. The statistical evidence demonstrated racial disparities in promotion. Furthermore, there was a sociology report explaining the causal relationship between MTA and MetroNorth practices and the discriminatory impact reported by the statistics.

56.     In that case, *Veronica Caridad, individually and on behalf of all other similarly situated, et. al., Plaintiffs-Appellants v. MetroNorth Commuter Railroad, Defendant-Appellee* 191 F. 3d 283 (2d Cir. 1999), the Court stated "The Class Plaintiffs submitted evidence that tends to establish that being Black has a statistically significant effect on an employee's likelihood of being promoted; indeed, being Black reduces an employee's likelihood of promotion by approximately 33 percent. In conducting her analyses, the Class Plaintiffs' expert controlled for various factors that one would expect to be relevant to the likelihood of disciplinary action and promotion. These statistical disparities are not insignificant." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999).

57.     As per Stipulation of Settlement in *Caridad. Id.,* MTA/MetroNorth was required to establish a Human Resources Review Committee. This Committee was to be comprised of the Vice President of Human Resources and Diversity, the Director of Workforce Diversity, the Director of Labor Relations, and two management employees from major operations or

transportation service departments within the Company. The purpose of the committee was to determine if any steps needed to be taken to assist the Company in providing promotional opportunities on a non-discriminatory basis. *Caridad v. MetroNorth*, 191 F.3d 283 (2nd Cir. 1999).

58.     MTA and MetroNorth failed to create an effective Human Resources Review Committee and failed to follow any of the procedures that would have prevented their discriminatory actions, thus violating their legal obligations. *Caridad v. MetroNorth*, 191 F.3d 283 (2nd Cir. 1999).

59.     MTA and MetroNorth have a pattern and practice of discriminating against African-American and/or African-American female employees. If equal employment existed at MTA and MetroNorth Calandra Brown would have been promoted for cause rather than terminated without cause.

60.     MetroNorth has created a hostile work environment because hiring practices are influenced by cronyism, favoritism, and politics, rather than earned through merit.

61.     In this environment, MetroNorth recognized the failure to promote Calandra Brown was a result of systemic discrimination and then continued to fail to promote her. MetroNorth permitted Calandra Brown's supervisors and colleagues to mock, criticize, and demean her after she filed a complaint and continued to foster a hostile work environment.

## COUNT 1
## DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

62.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the proceeding paragraphs as if set forth fully herein.

63.     Defendants MTA and MetroNorth have discriminated against Plaintiff on the basis of her race and gender in violation of Title VII by denying her the same terms and conditions of

employment available to employees who are not African-American and/or female, including, but not limited, subjecting her to disparate working conditions, denying her the opportunity to work in an employment setting free of unlawful discrimination, and unlawfully terminating her employment.

64.   Under the Civil Rights Act of 1964, § 701 et seq., 42 USCA § 2000 et seq., it shall be an unlawful employment practice for an employer:

>   a.   to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his/her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, creed, religion, sex, or national origin; or
>
>   b.   to limit, segregate, or classify his/her employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

65.   As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of Title VII, Calandra Brown has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

66.   As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of Title VII, Calandra Brown has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

MTA and MetroNorth also created a hostile working environment because employees, are permitted to be harassed by supervisors and coworkers and are permitted to be ridiculed for applying for promotions. In addition, they have created a culture of cronyism, favoritism, and politics, which is not conducive to a healthy working atmosphere.

67.     MTA and MetroNorth violated Plaintiff's rights and the rights of those similarly situated by creating a hostile work environment in which cronyism, favoritism, and politics wins out over merit.

68.     This has created an environment in which employees are scared to speak up against the practices of MTA and MetroNorth

69.     All Defendant's acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of her race in violation of The Civil Rights Act of 1964.

70.     All Defendant's acts, practices, and policies described herein constitute discrimination against Plaintiff on the basis of her gender in violation of The Civil Rights Act of 1964.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

71.     Plaintiff repeats and re-alleges all above paragraphs as if said paragraphs were fully set forth herein at length.

72.     In violation of 42 U.S.C. §2000e-3, Defendants have taken adverse employment actions against the Plaintiff in retaliation for Plaintiff's protected activities in filing a complaint with Human Resources.

73.     Plaintiff's actions were within her rights as an employee and the resulting harassment, hostile work environment, and write ups constitute unlawful employment practice.

74.     Plaintiff has been damaged by virtue of Defendants' conduct and is entitled to recover damages from Defendants.

## COUNT III
## DISCRIMINATION IN VIOLATION OF SECTION 1981

75.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

76.     Defendant has discriminated against Plaintiff on the basis of her race in violation of Section 1981 by denying her the same terms and conditions of employment available to employees who are white, including but not limited to, subjecting her to disparate working conditions, denying her the opportunity to work in an employment setting free of unlawful discrimination, and unlawfully terminating her employment.

77.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to, loss of future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

78.     As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

79.     Defendant's unlawful and discriminatory actions constitute malicious, willful, and wanton violations of Section 1981, and were done with conscious disregard for CALANDRA

BROWN's civil rights, for which CALANDRA BROWN is entitled to an award of punitive damages. .

**COUNT IV**
**DISCRIMINATION IN VIOLATION OF THE NEW YORK STATE HUMAN**
**RIGHTS LAW, N.Y. EXECUTIVE LAW §296**

80.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the proceeding paragraphs as if set forth fully herein.

81.    Defendants discriminated against Plaintiff on the basis of her race and/or gender in violation of the New York State Human Rights Law by denying her the same terms and conditions of employment available to employees who are not African-American and/or female, including but not limited to subjecting her to disparate working conditions, denying her an opportunity to work in an employment setting free of unlawful discrimination, and terminating her employment.

82.    MTA and MetroNorth also created a hostile working environment because employees, are permitted to be harassed by supervisors and coworkers and are permitted to be ridiculed for applying for promotions.  In addition, they have created a culture of cronyism, favoritism, and politics, which is not conducive to a healthy working atmosphere.

83.    MTA and MetroNorth violated Plaintiff's rights and the rights of those similarly situated by creating a hostile work environment in which cronyism, favoritism, and politics wins out over merit.

84.    This has created an environment in which employees are scared to speak up against the practices of MTA and MetroNorth.

85.     As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

86.     As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**COUNT V**
**RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW, N.Y. EXECUTIVE LAW §296**

87.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the proceeding paragraphs as if set forth fully herein.

88.     Defendants have taken adverse employment actions against the Plaintiff in retaliation for Plaintiff's protected activities in filing a complaint with Human Resources.

89.     Plaintiff's actions were within her rights as an employee and the resulting harassment and write ups constitute unlawful employment practice.

90.     Plaintiff has been damaged by virtue of Defendants' conduct and is entitled to recover damages from Defendants.

91.     As a direct and proximate result of the Defendants' unlawful discriminatory and retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered,

and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

92.    As a direct and proximate result of the Defendants' unlawful discriminatory and retaliatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## COUNT VI
## DISCRIMINATION IN VIOLATION OF NYC ADMINISTRATIVE CODE

93.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the proceeding paragraphs as if set forth fully herein.

94.    Defendant discriminated against Plaintiff on the basis of her race and/or gender in violation of the New York City Human Rights Law, namely, Title 8 of the Administrative Code of the City of New York, by denying her equal terms and conditions of employment, including but not limited to, denying her the opportunity to work in an employment setting free of unlawful discrimination, and/or terminating her employment based on her race and/or gender.

95.    As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the New York City Human Law, Plaintiff has suffered, and continue to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

96.    As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continue to suffer,

17

severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

97.     Defendants' unlawful discriminatory action constitute malicious, wistful and wanton violations of the New York City Human Rights Law, for which Plaintiff is entitled to an award of attorney's fees and punitive damages.

## COUNT VII
## RETALIATION IN VIOLATION OF NYC ADMINISTRATIVE CODE

98.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the proceeding paragraphs as if set forth fully herein.

99.     Defendant has taken adverse employment actions against the Plaintiff in retaliation for Plaintiff's protected activities in filing a complaint with Human Resources.

100.    Plaintiff's actions were within her rights as an employee and the resulting harassment and write ups constitute unlawful employment practice.

101.    Plaintiff has been damaged by virtue of Defendant's conduct and is entitled to recover damages from Defendant.

102.    As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

103.    As a direct and proximate result of the Defendant's unlawful discriminatory conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## COUNT VIII RULE 23 CLASS ACTION

104.    Plaintiff repeats and re-alleges all prior paragraphs as if fully set forth herein at length.

105.    Plaintiff brings this action individually, and pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class of all past, present and future African-American managerial employees and/or African-American female employees of MTA and/or MetroNorth (the "Class"). The members of the Class are so numerous that joinder of all members is impracticable.

106.    There are questions of law or fact common to the Class, including, without limitation: Whether MTA and/or MetroNorth's common policies have an adverse impact upon the Class, and, if so, whether this impact is justified by business necessity;

a. Whether MTA and/or MetroNorth's policy or practice of granting discretionary authority to its managers and supervisors to make decisions concerning compensation, promotions, job evaluations, job classifications and job assignments negatively affects Class members;

b. Whether MTA and/or MetroNorth has a policy or practice of grooming Caucasian employees for advancement, while denying the same opportunities to African-American employees;

c. Whether MTA and/or MetroNorth has a policy or practice of assigning lesser job classifications or wages to African American employees than are assigned to similarly situated Caucasian employees;

d. Whether MTA and/or MetroNorth has a policy of practice of making less desirable work assignments to African-American employees than to Caucasian employees;

e. Whether African-American employees at MTA and/or MetroNorth are subject to a pattern and practice of racial harassment;

f. Whether MTA and/or MetroNorth's conduct alleged herein constitutes a hostile work environment for the Class;

g. Whether MTA and/or MetroNorth have a policy and practice of retaliating against Class members who object to or who oppose MTA and/or MetroNorth's unlawful employment practices;

h. Whether equitable relief is warranted and the nature of such relief;

i. Whether MTA and/or MetroNorth's class-wide compensatory damages are warranted; and

j. Whether MTA and/or MetroNorth's conduct warrants an award of punitive damages

107.   Plaintiff's claims are typical of the claims of the members of the Class. The Individual Plaintiff has been subjected to each form of the discriminatory common operating policies and practices and hostile work environment caused by MTA and/or MetroNorth. The policies and practices complained of in this Complaint affect the entire Class.

108.   Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no conflict with the Class members and has retained counsel who are experienced in class action litigation and cases of this nature.

109.    This action is properly maintained under Rule 23(b)(20 and/or (b)(3) because: a) MTA and/or MetroNorth has maintained an ongoing pattern and practice of discrimination on the basis of race and gender and a hostile work environment, thereby acting or refusing to act on grounds generally applicable to the Class, making appropriate final injunctive or declaratory relief with respect to the Class as a whole; and b) questions of law and fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this case.

110.    MTA and MetroNorth violated the rights of the class of similarly situated employees, including all African-American and/or African American female employees.

111.    MTA and MetroNorth set a poor example to managers at MTA by demonstrating that MTA managers can violate rules and avoid discrimination charges by offering severance to African-American and/or African-American female employees who have been discriminated against or who have responded or have been critical of discrimination, within the property channels of the MTA and/or MetroNorth, without consequence to the managing discriminatory actor.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor against Defendants, containing the following relief:

A.    A declaratory judgment that the actions, conduct and practices of defendants complained of herein violate the laws of the United States, the State of New York, and the City of New York;

B.    An injunction and order permanently restraining defendants from engaging in such unlawful conduct;

C.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damage, including but not limited to, loss of past and future income, wages, compensation, seniority, and other benefits of employment;

D.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

E.     An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to the professional and personal reputation and loss of career fulfillment;

F.     An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

G.     An award of punitive damages in an amount to be determined at trial;

H.     An award of costs that Plaintiff has incurred in his action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

I.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages started herein.

Dated: March 22, 2017
New York, New York

Respectfully Submitted,

**JACOB FUCHSBERG LAW FIRM**

By: _____

     Alan Fuchsberg

    500 Fifth Avenue
    New York, NY 10110
    Telephone: (212) 869-3500

*COUNSEL FOR PLAINTIFF*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**                    Case No.:

CALANDRA BROWN,

                                                                                Plaintiff,

                                    - against -

METROPOLITAN    TRANSPORTATION    AUTHORITY    and    **METRO-NORTH**
COMMUTER RAILROAD,

                                                                                Defendants.

# COMPLAINT

### THE JACOB D. FUCHSBERG LAW FIRM, LLP
**Attorneys for Plaintiff**
Office and Post Office Address, Telephone
500 Fifth Avenue, 45th Floor
New York, NY 10110
(212) 869-3500

To                                                    Service of a copy of the
                                                      within is hereby admitted.

                                                      Dated: _____ 201___
Attorneys for

PLEASE TAKE NOTICE:

____   NOTICE OF ENTRY that the within is a (certified) true copy of a _____ duly entered in the _____
       office of the clerk of the within named court on _____ 201__

____   NOTICE OF SETTLEMENT that an order of which the within is a true copy will be presented for settlement to the HON.
       _____ one of the judges of the within named Court, at _____ on
       _____ 201__ at _____ ___M

Dated:

                                    Yours, etc.

                    **THE JACOB D. FUCHSBERG LAW FIRM, LLP**